**In re Kimberly Marie LAMAR, Debtor.**

**Kimberly Marie LAMAR, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. BK–S–88–2777–RCJ, CV–S–89–653–PMP (RJJ).**

United States District Court,
D. Nevada.

Feb. 26, 1990.

Barry L. Lieberman, Dickerson, Dickerson & Lieberman, Las Vegas, Nev., for debtor/appellant.

Rollin Thorley, Dist. Counsel, I.R.S., Las Vegas, Nev., for appellee.

## OPINION

PRO, District Judge.

Debtor commenced bankruptcy proceedings under chapter 13 of the Bankruptcy Code on September 1, 1988. On May 30, 1989, the United States filed a Motion to Dismiss (# 13), asserting that the Debtor is not eligible to be a petitioner in a chapter 13 case because she does not meet the debt restrictions set forth under 11 U.S.C. § 109(e). That section provides in pertinent part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 ... may be a debtor under chapter 13 of this title.

The Bankruptcy Court entered Findings of Fact and Conclusions of Law (# 22) and an Order Dismissing Case (# 24), reflecting that Court's decision that the Debtor does not meet the debt restrictions. Debtor filed a timely Notice of Appeal (# 25) and an Opening Brief (# 42). The United States filed an Answering Brief (# 43) to which Debtor filed a Reply (# 44).

Debtor's appeal is based on the fact that a 100% penalty assessed by the Internal Revenue Service, totalling nearly $30,000, is disputed and should not, therefore, be included in the § 109(e) computation. Debtor reasons that the dispute renders the debt unliquidated, especially because there was no opportunity for judicial review of the penalty before it was assessed. Debtor further argues that the mere fact that the IRS claims a debt is owing should

not act to disqualify her from proceeding under chapter 13. However, this Court now holds that the 100% penalty was properly included in the computation.

## I.

■ The Bankruptcy Appellate Panel of the Ninth Circuit has held "that disputed unsecured debt is not excluded when determining whether the $100,000 limitation is exceeded." *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982). The Panel there held that "the words *disputed, contingent,* and *unliquidated* have different meanings" and "[o]nly contingent or unliquidated debt is excluded from the computation." *Id.* at 672–73 (emphasis in original). The *Sylvester* court noted the varying interpretations of the concept of "liquidation" and decided to adopt this one: "'ready determination and precision in computation of the amount due ... [or] whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.'" *Id.* at 673 (quoting *In re Bay Point Corp.*, 1 B.C.D. 1635 (D.N.J.1975)). The *Sylvester* court concluded that so long as the amount of the claim was "readily ascertainable", it was "liquidated," regardless of whether the claim was disputed. *Followed in In re Wenberg*, 94 B.R. 631 (9th Cir. BAP 1988); *In re Michaelsen*, 74 B.R. 245 (Bankr.D. Nev.1987); *In re Potenza*, 75 B.R. 17 (Bankr.D.Nev.1987).

■ While this Court is not bound by the decisions of the BAP panel, its holdings on this issue are persuasive. The fact that Debtor disputes the imposition of the 100% penalty does not render that debt unliquidated. In so holding, this Court rejects the decisions in *In re Lambert*, 43 B.R. 913 (Bankr.D.Utah 1984) and *In re King*, 9 B.R. 376 (Bankr.D.Or.1981), which held that a debt is not liquidated if there is a substantial dispute regarding liability or amount. A definite sum of money is owed by the Debtor to the IRS unless and until the Debtor proves otherwise. This Court's conclusion that the sum is counted toward the $100,000 is not meant to approve the imposition of the penalty or preclude any

challenge to its assessment. It does, however, mean that the Debtor owed more than $100,000 in noncontingent, liquidated, unsecured debts on the date she filed the petition.

## II.

■ Debtor further argues that, even if this Court follows the *Sylvester* decision, the Bankruptcy Court erred in not granting an evidentiary hearing regarding the disputed claim. In a somewhat confusing passage, the *Sylvester* court noted:

It is also apparent that the court must determine the liquidated amount of any disputed claim prior to making the computation required by section 109(e). Otherwise, the federal court jurisdiction would depend on the accuracy and good faith of both creditors and debtors. Experience teaches that accuracy, at least, is elusive.

19 B.R. at 673. Debtor has vigorously argued that this passage requires the Bankruptcy Court to hold some kind of evidentiary hearing regarding the merits of the dispute in order to assign a "liquidated value" to the debt. However, this Court disagrees with such an interpretation. This Court's reading of the Opinion suggests that the *Sylvester* court intended only that the Bankruptcy Court look at whether there is some other reason why the claim or some portion thereof is not readily ascertainable, e.g., if it is a tort claim or includes a claim for punitive damages. If so, then such portion is not liquidated and would not be included. It is clear that the fact of the dispute itself would not render the debt unliquidated.

It was no error for the Bankruptcy Court in this case to rely on the documents on file to determine the amount due, especially where the amount listed for the penalty by Debtor and that listed by the United States were nearly identical, and either number would have made the unsecured debts total more than $100,000. In cases such as *Wenberg* where a hearing was held, the amount at issue was not plain from the papers on file and a "simple hearing to determine the amount of a certain debt"

was needed. 94 B.R. at 634. In this case, even a "simple hearing" was not necessary. The amount of the claim was "readily ascertainable" without one, and Debtor's dispute as to the assessment of the penalty does not alter the conclusion that the debt was liquidated and appropriately counted toward the $100,000 cap.

## III.

 The Debtor's final argument for reversal is based on the fact that the IRS did not timely file its Proof of Claim, instead filing after the deadline had passed. Debtor asserts that this acts as a waiver or estoppel of their right to assert the validity of the disputed debt. Debtor cites in support *In re Morton*, 43 B.R. 215 (Bankr.E.D. N.Y.1984), in which the court said, "A creditor should bring on a § 109(e) motion in the first instance that it has the information that the debtor's debts may exceed the allowable limits." 43 B.R. at 220. However, in that case, the motion to dismiss was filed almost one and a half years after the filing of the petition. In contrast, it was only six months after the petition was filed in this case. Further, a plan had been confirmed in *Morton*, but that has not yet occurred here. Finally, the *Morton* court did not rely on that statement for its holding. Instead, the court denied the motion to dismiss because the focus of § 109(e) is on debts existing on the date the petition is filed, and the motion there was based on subsequent events.

Similarly, the Bankruptcy Court in this case held that the late filing of the Proof of Claim was not relevant to the Motion to Dismiss, because the § 109(e) calculation is made as of the date of filing. Subsequent activities do not affect how much was owed on that date. Thus, the Bankruptcy Court was correct in finding those facts irrelevant to the issue at bar, and the late filing does not prevent the IRS from raising the issue of the ineligibility of the Debtor for bankruptcy under chapter 13.

IT IS THEREFORE ORDERED that Debtor's Appeal (# 25) is denied, and the Judgment of the Bankruptcy Court (# 24) is affirmed.